UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IDA MCRAE,

    Plaintiff,

       v.                                                  No. 3:14-cv-1868(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____X

## RECOMMENDED RULING ON PENDING MOTIONS

Plaintiff Ida McRae has filed this appeal of the adverse decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 15]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 17]. The undersigned heard oral argument on January 28, 2016. For the reasons set forth below, the Court recommends that the decision of the Commissioner should be affirmed.

### Legal Standard

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

Plaintiff's application for DIB alleged a disability onset date of March 4, 2009. Her application was denied initially and upon reconsideration. A hearing was held before Administrative Law Judge Ronald J. Thomas (the "ALJ") on February 5, 2013. The ALJ issued an unfavorable decision on April 22, 2013. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This appeal ensued.

Plaintiff was forty-nine years of age on the alleged onset date. She has completed up through the 11th grade in school and has past experience working as an assembly line production supervisor. (R. 45). At the time of the hearing, Plaintiff was earning $331.00 per month from the State of Connecticut for babysitting her grandson on a daily basis. (R. 43). At oral argument, the parties stipulated to the facts as set forth in Plaintiff's brief and Defendant's brief, which the Court adopts and incorporates by reference herein.

**The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[1] (R. 26). At step two, the ALJ found the following severe impairments: history of low back pain, fibroid uterus, urinary incontinence, carpal tunnel syndrome, obesity, and polysubstance abuse in sustained remission. (R. 27). At step three, the ALJ found that these impairments, alone or in combination, did not meet or equal the severity of one of the listed impairments. (R. 28). The ALJ then found that Plaintiff retained the following residual functional capacity[2]:

---

[1] The ALJ found that while the money Plaintiff earns for babysitting is below the level of substantial gainful activity, that she babysits indicates some ability to work. (R. 26).
[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

> **Plaintiff can perform medium work except she is limited to occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, and balancing.**

(R. 28-33). At step four, the ALJ found Plaintiff was unable to perform her past relevant work. (R. 33). Finally, at step five, the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids") to find that there are jobs in significant numbers in the national economy that Plaintiff can perform. (R. 33-34). Accordingly, the ALJ found Plaintiff not to be disabled.

## Discussion

Plaintiff raises several issues on appeal, which the Court will discuss in turn.

1. Development of the Administrative Record

Plaintiff, who proceeded *pro se* at the hearing before the ALJ, first argues that the ALJ erred in fulfilling his duty to develop the record because he did not insist Plaintiff find an attorney, did not request certain missing records, and did not obtain a medical source statement from any of Plaintiff's treating physicians.

The Court is not aware of, and Plaintiff has not identified, any legal authority for the proposition that an ALJ must *insist* a claimant has an attorney. Here, Plaintiff first appeared for a hearing in October 2012 and that hearing was postponed to give her an opportunity to seek representation. (R. 58-60). Upon commencement of the second hearing, the ALJ inquired as to whether Plaintiff had an opportunity to seek a lawyer, and advised her that some lawyers would not charge a fee unless she was successful. (R. 41). A review of the record here satisfies the Court that Plaintiff was adequately informed of her right to representation, and knowingly waived that right.

3

Plaintiff contends that treatment notes from Dr. Bovina and from the Liberation Clinic are missing.  The record indicates, however, that Dr. Bovina's records were requested, and that his office responded that none were found and Plaintiff had not been seen since August 2008. (R. 213).  The ALJ's duty to develop the record does not, of course, go so far as to require the ALJ to force a physician's office to provide records.  As to the Liberation Clinic, Plaintiff told the consultative examiner that she had been to the Liberation Clinic, an outpatient center for alcohol and cocaine addiction, but that she "has not used in many years."  (R. 371).  There is no indication that any records from the Liberation Clinic were necessary for the ALJ to make a disability finding.  Plaintiff has not argued that that there were obvious gaps in the record due to these few missing reports.  In addition, she has not alleged how she was harmed by the absence of these specific records.  Plaintiff must be able to show how she was prejudiced by any failure to develop the record further.  *See Lena v. Astrue*, No. 3:10cv893(SRU), 2012 WL 171305 at *9 (D. Conn. Jan 20, 2012) ("Absent any showing of prejudice, the ALJ did not fail to meet his burden of developing the record and did not rely on incompetent evidence in deciding this case.").  The Court finds no error in the ALJ's development of the record in this respect.

Finally, Plaintiff avers that the ALJ's failure to obtain a medical source statement from a treating physician requires remand.  It is well-established that where an administrative record is devoid of "obvious gaps" and the ALJ has before him a "complete medical history," the ALJ is not required to develop the record further.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Lack of a medical source statement will not necessarily make a record incomplete.  *See* 20 C.F.R. § 404.1513(b)(6).  Here, the ALJ had treatment notes from Plaintiff's treating physicians, the report from consultative examiner Dr. Cohen, and the findings of the state agency medical consultants.  The record also indicates that Disability Determination Services sought medical

4

source statements from Plaintiff's treatment providers on numerous occasions. (R. 212, 282, 318, 341). While it may have been ideal for the ALJ himself to have sought a medical source statement, the Court cannot say that that ALJ breached his duty by not doing so. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (when there was sufficient evidence before the ALJ, the ALJ was not obligated to augment the record by obtaining a medical source statement from one of claimant's treating physicians). There is no error.

2. <u>Listed Impairments</u>

Plaintiff next argues that the ALJ's step three finding is flawed because he failed to find that her carpal tunnel syndrome met or equaled Listing 11.14 (peripheral neuropathies). This argument should be rejected. To meet or equal Listing 11.14, Plaintiff must show peripheral neuropathies with disorganization of motor function (significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station,) in spite of prescribed treatment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The evidence of record simply does not establish these criteria are met. For example, while treatment notes do state that Plaintiff had morning stiffness in her joints, these reports go on to state the stiffness is usually resolved within ten minutes of waking up. (R. 284, 290). Electromyogram and nerve conduction testing reveal only mild left carpal tunnel syndrome with sensory involvement only, no evidence of right sided carpal tunnel syndrome, no evidence of motor nerve involvement or denervation potentials, and *no evidence of peripheral neuropathy*. (R. 375-76) (emphasis added). Further, the daily activities to which Plaintiff testified she can complete – even with some assistance – show she can use both of her upper extremities: she is able to complete some chores, cook, do grocery shopping, and care for her grandson. (R. 49, 51, 162, 614-166, 194, 196, 198).

The burden of proof is on Plaintiff to present evidence she satisfies the Listing requirements. *Ruiz v. Apfel*, 26 F.Supp.2d 357, 367 (D. Conn. 1998). In order to meet or equal a Listing, the claimant must show that she meets all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Here, Plaintiff has not met her burden of showing that her impairment met or equaled Listing 11.14.

    3.  <u>The RFC</u>

Next, Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence. Plaintiff first argues that a finding of disability was mandated by Rule 201.10 of the Grids. This rule, however, specifically applies only to a claimant with an RFC for sedentary work. Here, because the ALJ determined that Plaintiff was capable of medium work, Rule 201.10 is not applicable. *See Coffie v. Comm'r of Soc. Sec.*, No. 707-CV-818 LEK/VEB, 2009 WL 2045618, at *10 (N.D.N.Y. July 8, 2009).

Plaintiff also argues that the RFC finding is not supported because the ALJ improperly gave great weight to the opinions of the state agency medical consultants. The Court finds no error in the weight given to these opinions; an opinion of a non-examining doctor that is consistent with substantial evidence in the record may be afforded significant weight. *See Cyr v. Astrue*, No. 3:10-cv-1032 CFD TPS, 2011 WL 3652493, at *11 (D. Conn. Aug. 19, 2011).

Finally, Plaintiff argues that the assessed limitations to occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, and balancing are inconsistent with an RFC for medium work. The Court agrees that the assessed limitations are inconsistent with medium work. *See Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985) ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects,

the sedentary and light occupational base is virtually intact."). The limitations that the ALJ assessed are consistent with light work, though. This error is a harmless one: if Plaintiff was not capable of medium work, a finding of not disabled would still follow because the assessed RFC is consistent with light work. Remand is not warranted on this point.

    4. Credibility

Plaintiff's next argument is that the ALJ did not properly evaluate her credibility by failing to make specific findings concerning her pain and by improperly characterizing her activities of daily living as ones she could complete without assistance. The Court is not persuaded there is an error with the credibility assessment.

While the ALJ is required to take into account a claimant's reports of pain and other limitations, the ALJ is not required to accept those subjective complaints without question. *Taylor v. Astrue*, No. 3:09cv1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The ALJ did that here.

    5. The Step Five Finding

Finally, Plaintiff argues that the Commissioner did not meet her burden at step five because the ALJ erroneously relied on the Grids and failed to call a vocational expert. This argument should fail.

"It is well established that the Commissioner may ordinarily satisfy her burden of proof at step five by means of reliance on the Grids and their determinations of the types and numbers of jobs that exist in the national economy based on a claimant's age, ability, education, and work experience." *Mattioli v. Comm'r of Soc. Sec.*, No. 3:14-cv-00182 JAM, 2015 WL 4751046, at

*4 (D. Conn. Aug. 11, 2015). The Grids[3] account for limitations related to physical strength, and are therefore inapplicable when a claimant has nonexertional limitations which "significantly limit the range of work permitted by [her] exertional limitations." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). When this is the case, an ALJ must not rely solely on the Grids at step five and must consult a vocational expert. *Id.* A nonexertional impairment "significantly limits a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity.'" *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (citing *Bapp* at 605-06). Here, as discussed above, while the limitations set forth in the RFC are inconsistent with the demands of medium work, they are consistent with the demands of light work. Plaintiff has not shown that there are additional nonexertional limitations that significantly limit her range of work such that reliance on the Grids was inappropriate. While she does argue that her carpal tunnel syndrome causes additional limitations, this bare assertion without more is insufficient; Plaintiff has not actually established any functional limitations stemming from this impairment. As such, the ALJ did not err in relying on the Grids at step five.

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence. Accordingly, the Court recommends

---

[3] The Grids function by taking "into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy." *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 17] should be granted and that Plaintiff's Motion to Reverse [Doc. # 15] should be denied.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this  3rd  day of February, 2016, at Bridgeport, Connecticut.

                 */s/ William I. Garfinkel*
                 WILLIAM I. GARFINKEL
                 United States Magistrate Judge